UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ALEKSEI M.,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN, LAWRENCE COUNTY JAIL; FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND UNITED STATES ATTORNEY FOR THE DISTRICT OF SOUTH DAKOTA,<br><br>Defendants. | 5:26-CV-05030-RAL<br><br>OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS AND ORDERING RELEASE |

On March 30, 2026, Petitioner Aleksei M. filed a Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Doc. 1. The Department of Homeland Security's Immigration and Customs Enforcement (ICE) has detained Aleksei M. since November 13, 2025, after he was stopped for speeding in South Dakota. Aleksei M. is a citizen of Russia who has resided in the United States for more than three years after receiving humanitarian parole and being granted employment authorization until 2029. Aleksei M. claims the Government has wrongfully detained him without a bond hearing in violation of the Due Process Clause of the Fifth Amendment. Id. For the reasons explained below, the Petition is granted.

## I.    Background

On February 4, 2023, Aleksei M., requesting asylum based on fear of political persecution, arrived with his wife and minor child in the United States and presented themselves at the Gateway ·

1

International Bridge in Brownsville, Texas. Doc. 14 ¶ 4; Doc. 14-3; Doc. 1-1 at 2, 4–15, 37–38. Aleksei M. and his family are citizens of Russia, and Aleksei M. claims that his support for the pro-democracy movement and for Alexei Navalny in particular exposes him to prosecution in Russia. Doc. 1 at 2; Doc. 1-1 at 8. At the port of entry, CBP Officer Alfredo Chavez paroled Aleksei M. and his family into the United States pending a 240 hearing and gave Aleksei M. a Notice to Appear (Form I-862) with an immigration court date of April 21, 2027. Doc. 14-1 at 1; Doc. 14-3 (listing disposition as Notice to Appear); see also Doc. 1-1 at 16 (listing hearing date as April 21, 2027). The most recent I-94 form of record showed that Aleksei M. had been admitted on humanitarian parole until February 3, 2024. Doc. 1-1 at 2; see also id. at 4 (listing status expiring as February 3, 2024).

On May 3, 2023, an individual hearing was scheduled for March 18, 2026. Doc. 1-1 at 25. Aleksei M. applied for asylum, and this application was filed by Aleksei M.'s first immigration attorney, Irina Kameristy, on December 14, 2023. Id. at 16; Doc. 18-2. Aleksei M. claims in his Petition that Kameristy "submitted an incomplete and substantively blank Form 1589, leaving the [initial] asylum application without factual information or supporting evidence required for adjudication." Doc. 1 at 3; see Doc. 18-2.

After the United States paroled Aleksei M. and his family, they resided in Texas. Doc. 1 at 2; Doc. 1-1 at 3. Aleksei M. has a history of compliance with DHS and no criminal history. Doc. 1. Since arriving in the United States, Aleksei M. and his family have been very active in their community, as shown in multiple letters of record. Doc. 1-1 at 28–38; Doc. 18-5. On March 27, 2023, Aleksei M. applied for employment authorization, which was approved on June 13, 2023. Doc. 1-1 at 3. This initial employment authorization was valid from June 13, 2023, to

February 3, 2024.[1] Id. On July 24, 2024, Aleksei M. and his family formally notified the United States through counsel that they had moved to Oswego, Illinois. Doc. 18-3. On August 20, 2024, Illinois issued Aleksei M. a driver's license, which expires on January 16, 2029. Doc. 18-4.

On January 17, 2025, the United States extended Aleksei M.'s work authorization until January 16, 2029. Doc. 18-1. The United States issued Aleksei M. a card documenting his work authorization and other identification information. Id. Self-employed, Aleksei M. delivers light freight throughout the United States. Doc. 18-5 at 59; Doc. 18-14. While on humanitarian parole, Aleksei also filed his 2024 tax return. Doc. 1-1 at 26–27. On June 3, 2025, the United States notified Aleksei M. that an in-person hearing would be held in Chicago on November 16, 2026. Doc. 18-6.[2]

On November 13, 2025, Aleksei M. was driving in the course of his employment when the South Dakota Highway Patrol stopped him for speeding in Belle Fourche, South Dakota. Doc. 1 at 2; Doc. 14 ¶ 5; Doc. 17 at 4. When stopped, Aleksei M. had his employment authorization and driver's license on his person. Doc. 17 at 4. The Highway Patrol Officer contacted ICE and then arrested Aleksei M. under 287g authority. Doc. 1 at 2; Doc. 14 ¶ 5; Doc. 17 at 4. ICE Deportation Officer Jason Burchett took custody of Aleksei M. and transported him to the ICE Office in Rapid City, South Dakota. Doc. 14 ¶ 5; Doc. 14-4.

---

[1] Aleksei M. is the sole financial provider for his family and notes his wife has significant health issues. Doc. 1 at 2. This does not affect the due process analysis.

[2] It is unclear from the record, but it appears this hearing was scheduled regarding Aleksei M.'s asylum application unlike the previously scheduled March 18, 2026 hearing, which was docketed before Aleksei M.'s attorney filed his first asylum application in December 2023.

There were two I-200 warrants provided to this Court.[3]  The first I-200 warrant is dated November 13, 2025, and signed by Chad Fischer.[4]  Doc. 18-7; see Doc. 14-4.  This first warrant reads that Fischer "ha[s] determined that there is probable cause to believe that Aleksei [M.] is removable from the United States."  Id.  Fischer filled in Aleksei M.'s name and signed and dated the warrant.  Id.  Fischer checked none of the boxes on the form for a determination of probable cause nor wrote anything in for potential grounds.  Id.  On November 14, 2025, there was a second, typed I-200 warrant.  Doc. 14-2.  On this warrant, Fischer's name is typed though not signed.  Id.  The second warrant included two bases for probable cause:

> [(1)] the pendency of ongoing removal proceedings against the subject . . . [and (2)] biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

Id.  Burchett served Aleksei M. with both warrants.  Id.; Doc. 18-7.

On November 14, 2025, Burchett prepared an I-213 Form.  Doc. 14-4.  On that form, Burchett described Aleksei M. as having a negative immigration record, being unemployed or retired, as "an alien present without admission or parole," and as "immigrant without an immigrant visa."  Id.  The form also stated that Aleksei M. "makes no claim to U.S. citizenship or current lawful immigration status and is an alien without an immigrant visa.  [Aleksei M.] is amenable an alien illegally in the United States without having been admitted or paroled."  Id.  The same document included information that Aleksei M. had been paroled into the United States for a year

---

[3] The Government, in its Response, only attached the second unsigned I-200 warrant and omitted the first.  See Docs. 14, 14-2.

[4] Fischer is not identified or discussed in the response and attached paperwork submitted by the Government—his name does not appear in the narrative of Aleksei M.'s arrest submitted by ICE other than on a signature line as an examining officer.  See Doc. 18-7; Doc. 14-4.

in February 2023 after lawfully presenting himself at the Gateway International Bridge. Id. Aleksei M. was held without bond and called his attorney. Id.

Sometime in November 2025, Aleksei M. retained new immigration counsel, Nataliya Galvin, who prepared and filed a new and properly completed Form I-589 application alleging good cause for asylum on behalf of Aleksei M. on December 4, 2025. Doc. 1 at 3; Doc. 18-9; Doc. 18-10. The Government acknowledged receipt of the asylum fee a week later. Doc. 18-11. On January 7, 2026, Galvin filed hundreds of pages of documents, including letters, a declaration, an expert legal opinion, photographs, and text messages supporting Aleksei M.'s application and reasons for fearing political persecution due to his pro-democracy activities in Russia. Doc. 18-5.

On March 18, 2026, Aleksei had his Individual Hearing before an Immigration Judge. Doc. 1 at 3; Doc. 13-1. The Immigration Judge found Aleksei M. inadmissible under the Immigration and Nationality Act (INA), denied Aleksei M.'s claim for asylum, denied Withholding of Removal, denied Deferral of Removal, ordered him removed to Russia, and advised him of his appeal rights. Doc. 13-1. Aleksei M. adds that in denying his application, the Immigration Judge "cit[ed] the absence of a complete asylum application and supporting documents, which resulted directly from the errors of Petitioner's former counsel." Doc. 1 at 3. Aleksei M.'s new counsel filed a timely appeal as well as a civil malpractice lawsuit and a bar complaint against the former immigration attorney. Doc. 1 at 3; Doc. 1-1 at 20–23. Aleksei M. paid the appellate fee, and the United States acknowledged receipt. Doc. 1-1 at 24; Doc. 18-12. Aleksei M.'s appeal of his application denial and removal order remains pending. Doc. 1 at 3.

On March 30, 2026, Aleksei M. filed the instant Petition, asserting that he is entitled to immediate release or a bond hearing because his prolonged detention without a bond hearing violates his Fifth Amendment right to due process. Id. at 4. On April 1, 2026, this Court enjoined

5

for fourteen days Aleksei M.'s removal or transfer outside of the District of South Dakota until further order of the Court so there was no risk that his removal would deprive this Court of jurisdiction over his Petition. Doc. 4. This Court also appointed James Leach to represent Aleksei M. on his Petition. Id. at 3–4. On April 15, 2026, this Court extended its Order enjoining Respondents from removing or transferring Aleksei M. outside of the District of South Dakota for an additional fourteen days to allow completion of briefing and time to write this decision. Doc. 11.

## II.    Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of the confinement and, if successful, obtain release. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Habeas corpus relief under 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detention, Zadvydas v. Davis, 533 U.S. 678, 687 (2001), but a court's jurisdiction to hear such claims is limited, see 8 U.S.C. § 1226(e); Demore v. Kim, 538 U.S. 510, 516–17 (2003). The petitioner bears the burden of proving by a preponderance of the evidence that his or her detention is unlawful. Walker v. Johnston, 312 U.S. 275, 286 (1941); Muse v. Mullin, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *2 (N.D. Iowa Apr. 14, 2026).

In his Petition, Aleksei M. argues that his detention without a bond determination violates the Due Process Clause of the Fifth Amendment. Docs. 1, 17. Respondents assert that Aleksei M. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore is not entitled to release. Doc. 13 at 4. This position is consistent with the change in July of 2025 in interim guidance from the Department of Homeland Security (DHS) and ICE. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1150 (D.

Minn. 2025) (noting new interim guidance and discussing historical treatment of noncitizens residing in the United States and interpretations of §§ 1225 and 1226). Before July of 2025 and as previously and widely understood, 8 U.S.C. § 1226 might have provided a statutory right for Aleksei M. to a bond hearing. See Esli D. B.G. v. Bondi, No. 5:26-CV-05020-RAL, 2026 WL 734992, at *4 (D.S.D. Mar. 16, 2026). But a recent decision of a panel of the United States Court of Appeals for the Eighth Circuit chose to interpret "seeking admission" in 8 U.S.C. § 1225 very broadly. Avila v. Bondi, 170 F.4th 1128, 1132–38 (8th Cir. 2026). Though Judge Erickson's dissent pointed out that this had the effect of rendering much of § 1226 "superfluous," this Court is bound by the majority decision's statutory interpretation in Avila. See id. at 1138–41 (Erickson, J., dissenting). However, Avila addressed only the statutory right to a bond hearing and not the constitutional claim raised by Aleksei M. in his Petition. See id. at 1140 n.8 (Erickson, J., dissenting).

Respondents argue that Aleksei M.'s due process argument is without merit because "[c]ivil immigration detention pending removal proceedings is a constitutionally permissible aspect of the removal process," and "[t]he Eighth Circuit has clearly established that continued mandatory detention pending an administrative appeal from a removal order does not violate due process, even when that detention exceeds one year." Doc. 13 at 5 (citing Demore, 538 U.S. at 523 (reviewing a due process challenge to § 1226(c)); Banyee v. Garland, 115 F.4th 928, 933–34 (8th Cir. 2024) (reviewing a due process challenge to § 1226(c))). Respondents describe their actions as "merely maintaining the statutorily mandated status quo while Petitioner exhausts his appellate remedies," and therefore, "the resulting timeline is a necessary consequence of the administrative process, not an unreasonable delay." Id. at 5–6.

Over the course of the last year, the executive branch has made fundamental changes to the policies and procedures compromising federal immigration law, much of which has been contested. See, e.g., Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42, 86, 89, 94–97 (D.D.C. 2025), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026) (affirming grant of summary judgment in favor of plaintiffs and affirming but modifying class certification order).[5]   But all immigration policy changes remain "subject to important constitutional limitations" as the Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693, 695; see also A.A.R.P. v Trump, 605 U.S. 91, 94 (2025) (per curiam) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act); Refugee & Immigrant Ctr. for Educ. & Legal Servs., 793 F. Supp. 3d at 89. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (cleaned up and citation omitted).  Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

---

[5] See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42 (D.D.C. 2025) (concluding "that neither the INA nor the Constitution grants the President or the Agency Defendants authority to replace the comprehensive rules and procedures set forth in the INA and the governing regulations with an extra-statutory, extra-regulatory regime for repatriating or removing individuals from the United States, without an opportunity to apply for asylum or withholding of removal and without complying with the regulations governing CAT protection"), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616, at *2 (D.C. Cir. Apr. 24, 2026) ("We conclude that the INA's text, structure, and history make clear that in supplying power to suspend entry by Presidential proclamation, Congress did not intend to grant the Executive the expansive removal authority it asserts.").

manner." Mathews, 424 U.S. at 332 (cleaned up and citation omitted). The Supreme Court has observed in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens," Mathews v. Diaz, 426 U.S. 67, 79–80 (1976), and that "the nature of th[e] protection" to which noncitizens are entitled under the Due Process Clause "var[ies] depending upon status and circumstance," Zadvydas, 533 U.S. at 693–94. Therefore, this Court considers what protections Aleksei M. is entitled to as a noncitizen detained under § 1225(b)(2) during his removal proceedings.

Demore and Banyee provide this Court with limited guidance; both are distinguishable as they involved due process challenges brought by petitioners detained under 8 U.S.C. § 1226(c), not § 1225(b)(2). See Banyee, 115 F.4th at 931 (reviewing how Demore already "had considered a due-process challenge to" § 1226(c) (citing Demore, 538 U.S. at 514)). In reaching its decision in Demore, the Supreme Court weighed the criminal noncitizens' due process challenge in the context of "the full procedural protections our criminal justice system offers" received *before* the criminal noncitizens' immigration detention. Demore, 538 U.S. at 513. Relying on the distinction between the statutory provisions § 1225(b)(2) and § 1226(c), multiple district courts within the Eighth Circuit have proceeded to analyze the factors established by Mathews v. Eldridge, 424 U.S. 319 (1976), when reviewing due process claims brought by detained noncitizens like Aleksei M. See David J.C.P. v. Blanche, No. CV 26-2181 (DWF/ECW), 2026 WL 1102725 (D. Minn. Apr. 23, 2026); Abbas v. Schneider, No. 4:26-cv-00132-SHL-WPK (S.D. Iowa Apr. 17, 2026); Almazov v. Williams, No. 4:26-cv-00080-RGE-HCA (S.D. Iowa Apr. 16, 2026); Muse, 2026 WL 1008532; Osman J.M.A. v. Blanche, No. CV 26-2123 (DWF/DJF), 2026 WL 1005056 (D. Minn. Apr. 14, 2026); Alicia N.F.C. v. Blanche, No. 26-2145 (DWF/JFD), 2026 WL 1005079 (D. Minn. Apr. 14, 2026); Pedro A.D.L.O.O. v. Bondi, No. 26-1959 (DWF/DJF), 2026 WL 948970 (D. Minn.

9

Apr. 8, 2026); <u>Maldonado v. Olson</u>, 795 F. Supp. 3d 1134, 1148–54 (D. Minn. 2025). <u>Cf. Singh v. Mullin</u>, No. C26-56-LTS-MAR, 2026 WL 1021846 (N.D. Iowa Apr. 15, 2026); <u>Ermekov v. Mullin</u>, No. C26-41-LTS-KEM, 2026 WL 1046766 (N.D. Iowa Apr. 17, 2026). <u>But see, e.g.</u>, <u>Gonzalez-Martinez v. Blanche</u>, No. 8:26CV143, 2026 WL 1045701 (D. Neb. Apr. 17, 2026); <u>Sanchez v. Bondi</u>, No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026).

Respondents then argue that even if this Court were to engage in the interest balancing test under <u>Mathews</u>, which Respondents maintain this Court cannot do after the Eighth Circuit's decision in <u>Banyee</u>, an application of those factors would "confirm[] that Petitioner's rights have not been violated." Doc. 13 at 7. Respondents first contend the private interest factor does not weigh in favor of Aleksei M. because "Petitioner lacks the decades of historical reliance, protected status, or prior ICE releases that elevate the liberty interests of long-term residents." <u>Id.</u> at 7–8 (citing <u>Landon v. Plasencia</u>, 459 U.S. 21, 32 (1982) as "holding that constitutional due process protections vary depending on an alien's established ties to the United States"). Respondents then combine argument on both the second and third factors, "the risk of an erroneous deprivation of liberty and the Government's interest," to state that "Petitioner has already received a comprehensive merits hearing before an Immigration Judge," and "the Government's interest in detention remains valid." <u>Id.</u> at 8. Respondents conclude by first referencing recent removal cases before the Supreme Court concerning a person's ability to challenge their detention and removal and then distinguishing due process cases referenced by this Court in its Order Enjoining Removal, Doc. 4, from the case at hand. <u>See id.</u> at 9–12.

The <u>Mathews</u> factors to determine whether civil detention violates due process are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

10

substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. First, Aleksei M.'s interest in release from detention is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529–31 (2004). "A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest." Abbas, No. 4:26-cv-132, at 11 (quoting Barrera Leon v. Warden, No. 4:26-1341, 2026 WL 90519, at *3 (S.D. Tex. Apr. 2, 2026)). The exhibits attached to Aleksei M.'s Petition and his asylum application indicate significant, though perhaps not longstanding, ties to communities here in the United States through numerous and detailed letters as well as his employment history. See Docs. 1-1; 18-5. Critically, the United States previously paroled Aleksei M. in 2023 with an initial notice to appear date in April 2027 and permitted him to legally work in the country until 2029. See Docs. 14-3; 18-1. As other courts have observed, noncitizens maintain a strong liberty interest "even if their parole status has expired or been terminated." Almazov, No. 4:26-cv-00080, at 11 (collecting cases). Aleksei M. had been living and working in the United States for almost three years consistent with his status granted by DHS before his arrest for speeding in South Dakota. The first factor weighs heavily in favor of Aleksei M.'s release.

As to the second factor, Respondents did not provide Aleksei M. with a bond hearing, or a process to meaningfully assess whether he should be detained during the pendency of his removal proceedings. Other district courts have characterized the risk of erroneous deprivation as "severe" when "Respondents are proposing *no procedure at all*." Abbas, No. 4:26-cv-00132, at 12 (emphasis in original). Further in the context of humanitarian parole, as another court observed, "[t]he risk of erroneous deprivation of liberty is high when no process has been provided before

re-detention but after parole into the United States" while "additional safeguards, such as 'an individualized assessment as to the government's interest in detaining Petitioner[,] would ameliorate that risk' of erroneous deprivation." Almazov, No. 4:26-cv-00080, at 13 (quoting Pedro A.D.L.O.O., 2026 WL 948970, at *3). Aleksei M.'s case is akin to the situation in Hyppolite v. Noem, 808 F. Supp. 3d 474 (E.D.N.Y. 2025), where the court noted that

> the record certainly establishes that there is, at the very least, a substantial likelihood that Respondents would have failed to meet their burden of proving that [Petitioner] constituted either a flight risk or a danger to the community. In other words, the risk that [Petitioner] was erroneously deprived of his liberty through Respondents' failure to provide him with a pre-detention hearing is exceedingly high.

808 F. Supp. 3d at 492. The second factor weighs in favor of Aleksei M.'s release.

Third, considering the Government's recognized significant interest in "ensuring that persons subject to removal do not commit crimes or evade law enforcement," Maldonado, 795 F. Supp. 3d at 1153–54, with Aleksei M.'s private interest in liberty and the risk of erroneous deprivation of that interest, this Court finds that the third factor weighs in favor of Aleksei M. The Government has not detailed any change in Aleksei M.'s circumstances to justify its decision to detain Aleksei M. "The Government's interest in continuing to detain Petitioner is further diminished where . . . the Petitioner has no criminal record, has attended all of his immigration court hearings, and has significant ties to the community—factors that bear directly on flight risk and dangerousness." Bonilla Chicas v. Warden, No. 5:26-CV-00131, 2026 WL 539475, at *11 (S.D. Tex. Feb. 20, 2026). As demonstrated by the record, Aleksei M. has a history of compliance with DHS and no criminal record other than the recent speeding stop in western South Dakota. Thus, Aleksei M.'s continued mandatory detention does not seem to further the Government's interest in ensuring Aleksei M. appears at future hearings or protecting the public. See Almazov, No. 4:26-cv-00080, at 14 ("[T]hose interests are not furthered by summary re-detention of paroled

12

noncitizens whom the government previously determined not to be flight risks nor dangers to the community . . . . [these interests] can be vindicated through an individualized, meaningful assessment as to [petitioner's] risk of absconding or danger to the community."). Finally, considering the fiscal and administrative burdens at issue, the high cost of detention coupled with the preexisting regulations on individualized detention assessments militate against the Government. See id. (citing 8 C.F.R. § 212.5(b) (2022)); Hyppolite, 808 F. Supp. 3d at 494 ("By contrast, the fiscal and administrative burdens of his ongoing detention are unacceptably high.").

Because all three Mathews factors weigh in favor of Aleksei M., this Court concludes that Respondents violated Aleksei M.'s due process rights when they detained him without a bond hearing despite having granted him permission to live and to work through 2029 in the United States and despite Aleksei M.'s only apparent unlawful or even improper act being one speeding arrest, warranting a grant of his habeas petition. See Abbas, No. 4:26-cv-00132, at 13 (collecting cases); Lopez-Arevelo v. Ripa, 801 F. Supp. 3d 668, 687 (W.D. Tex. 2025) ("This decision is supported by a growing number of district courts across the country who have found that holding people like Lopez-Arevelo in mandatory detention without a bond hearing likely constitutes a due process violation." (collecting cases)).

This Court now turns to the appropriate remedy. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (internal citation omitted)). In line with other district courts to have considered this issue, this Court finds that Aleksei M.'s detention violates his due process rights, and the appropriate remedy is release subject to the same conditions that Aleksei M. had been following before his detention in November 2025. Abbas, No. 4:26-cv-00132, at 13; Almazov, No. 4:26-cv-00080, at 14; Villanueva v. Mullin, No. 1:26-CV-849-RP, 2026 WL

1045719, at *5 (W.D. Tex. Apr. 15, 2026) ("In recent months, courts across the country have ordered the release of detainees in similar situations." (citation omitted) (collecting cases)); Santiago v. Noem, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Petitioner Aleksei M.'s Petition for a Writ of Habeas Corpus, Doc. 1, is granted. It is further

ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 48 hours of entry of this Order. It is further

ORDERED that upon Petitioner's release, Respondents must return to Petitioner any personal property, including personal identification documents and not re-arrest him unless a material change in circumstances occurs. It is finally

ORDERED that Respondents shall confirm Petitioner's release within three business days from the date of this Order.

DATED this 27th day of April, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

14